This is an action in boundary. Plaintiffs, Mr. and Mrs. Henly are the owners of a certain lot in the City of New Orleans described as follows: "A certain lot of ground, with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Fifth District of this city, in Square bounded by Teche, Newton, Homer and Brooklyn Streets, measuring 46 feet front on Monroe Street (now Teche), by a depth, between parallel lines, of 63 feet, 10 inches and 3 lines. The improvements thereon bearing the Municipal No. 931 Teche Street."
They acquired this property on February 15, 1939. Johann Kask, the defendant, is the owner of another piece of property adjoining that of plaintiffs and described as follows: "A certain lot or portion of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Fifth District of this city, Square No. 154, (Formerly Square No. 21), bounded by Teche (late Monroe), Newton and Homer Streets and Brooklyn Ave., (late Madison); said lot or portion of ground forms the corner of Teche Street and Newton Street, and measures 46 feet 6 inches front on Teche Street, by a depth and front on Newton Street of 63 feet, 10 inches and 3 lines, and is composed of lot No. 1 and part of lot No. 2 of said Square, and is now designated on the City Assessment Rolls as part of lot No. 11 of Square No. 154."
Kask acquired this property on August 14, 1912.
Plaintiffs allege that defendant, Kask, on or about November 17, 1939, constructed a small building which "was not erected within the true limits of defendant's said lot * * * and encloses, as part of defendant's property, a strip of land measuring 4 feet, 5 inches wide for a distance of about 49 feet, and thence about 6 feet, 9 inches and 4 lines wide for a distance of approximately 14 feet, 10 inches and 3 *Page 232 
lines, thus depriving petitioners of a strip of their land 4 feet, 5 inches wide for a distance of about 49 feet and thence 6 feet, 9 inches and 4 lines for a distance of approximately 14 feet, 10 inches and 3 lines, * * *".
Petitioners allege also that they have endeavored to obtain defendant's consent "to extra judicially fix the boundary line between the said lands, but that the said defendant refuses to have the matter settled in an amicable manner, * * *". They pray that defendant be cited to appear and answer the petition and that a surveyor be appointed by the court to make a survey of the two properties, and that the boundary between them be thus fixed according to law.
Defendant in his answer, in effect, admits, and in the brief filed on his behalf expressly admits that the building referred to is located partially on property originally forming part of the lot of ground owned by plaintiffs or their predecessors in title, but he avers that he, defendant, and his authors in title "have been in open, notorious, adverse, peaceful, public and continuous physical possession, without interruption, of the property under fence for a period in excess of thirty years last past, or more * * *."
Defendant prays that the suit of plaintiffs be dismissed.
A surveyor was appointed and a survey was made by him for the purpose of fixing the boundary. This survey shows that to the extent claimed by plaintiffs the said building does extend over and beyond the title limits of defendant's property and does encroach beyond the title limits of the property of plaintiffs and that even beyond the said building there is a fence which, as admitted by defendant, is located entirely on the property described in the title of plaintiffs. This fence defendant claims has been so located for more than thirty years and he contends that as a result, since this visible, physical boundary has been in existence during this period of time, and since he and his authors in title have occupied the entire property up to the said fence, including not only the land set forth and described in his title but also that portion beyond the limits of his title and between the said limits and the said fence, the right of plaintiffs to have the boundary fixed in accordance with the titles has been lost by the prescription of thirty years.
Plaintiffs in answer to this contention declare first, that as a matter of fact, the said fence at the time of the filing of this suit had not been in its present location for thirty years and that, as a matter of law, even if the said fence, when the suit was filed, had for thirty years been in its present location, still that fact could have afforded no protection to defendant because he had not himself occupied the property during thirty years, and therefore had not possessed that additional land during the necessary term. In other words, the legal question posed is whether one who relies upon prescription which is provided by Civil Code, Art. 852, under which even the previous title holder may in an action in boundary retain "any quantity of land beyond that mentioned in his title" if it appears that he has enjoyed uninterrupted possession of it "during thirty years" may, because of Art. 3493 "make the sum of possession necessary to prescribe, by adding to his own possession that of his author, * * *".
These various contentions were submitted to the District Court and judgment was rendered dismissing plaintiffs' suit. They have appealed.
On the question of fact which is presented, the testimony is conflicting. The suit was filed on October 24, 1939. Therefore if the plea of prescription is to prevail it must first appear as a matter of fact that the same fence to which defendant points as the physical visible boundary had been in existence in the same location for at least thirty years prior to the filing of the suit. He, himself, bought the property on August 14, 1912, and later, by sale and resale to and from Eureka Homestead Society, reacquired it on October 31, 1935. Treating the sale and resale merely as a mortgage, it thus appears that he, himself, has owned and occupied the property continuously from August 14, 1912 to the present time. If the sale and resale be not treated as a mortgage but be treated as actual sales, the conclusion which we have reached on the legal question would not be altered.
Defendant testified that for about two years before he bought his property in 1912, the entire property was fenced and that the particular division fence which we are now considering had been in its present location for at least those two years. *Page 233 
Perry Bach, a witness for plaintiff, stated that he had helped repair the same fence in 1906 or 1907, and that it was then exactly where it is now. There was, it is true, some hesitation about this testimony of this witness, and there is also the fact that in 1906-1907 this witness would have been only about 6 or 7 years old.
There is other testimony which is relied upon by plaintiffs, and in rebuttal there is testimony given by other witnesses which throws doubt on the claim of defendant that the fence had been in its present location at least since 1909. Were this question before us without the benefit of the finding made by our brother below, it is possible that we would feel that the defendant had not successfully borne the burden of proving the facts upon which his plea of prescription rests. But the District Judge saw and heard all of these witnesses and concluded that the defendant had borne this burden by a preponderance of the evidence and that the present fence had been in its present location for at least thirty years before the filing of the suit. We are unable to say that that conclusion was manifestly erroneous. We take it then, as an established fact, that the present visible boundary had been in existence more than thirty years when this suit was filed.
But defendant, himself, did not occupy the property all of that time and therefore if his plea of prescription is to prevail it must be upon the legal ground that he could "tack" to his own possession that of his predecessors in title. And this plaintiffs assert he may not do.
It must be remembered that this is purely a boundary suit. We do not find that the question of validity of any written title is in any way involved. We deem it important that this be borne in mind because the various cases which we shall cite in discussing the essential requisites which must be established by one who relies upon the prescription of thirty years have recognized the distinction between the prescription of thirty years which may be pleaded as a bar to an action in boundary and the same prescription where it is relied on in a suit involving title. And that the Article upon which defendant relies is applicable only in an action in boundary is shown clearly by the following quotation from Foscue v. Mitchell, 190 La. 758, 182 So. 740, 745. "Nor can defendants maintain their claim of title under the prescription of thirty years as provided by Article 852 of the Civil Code. The prescription referred to in the codal article is a boundary prescription. * * *"
As supporting the view that this is purely a boundary suit, we cite two cases decided by our Supreme Court, in both of which were discussed facts identical with those presented here, and in both of which that court designated the litigation growing out of those facts as actions in boundary. These two cases are Vicksburg, S. P. Ry. Co. v. Le Rosen, 52 La.Ann. 192, 26 So. 854 and Opdenwyer v. Brown, 155 La. 617, 99 So. 482.
We deem it unnecessary to ourselves discuss at length the various articles of the Code concerning the right to bring an action in boundary and the fact that under certain circumstances it is imprescriptable, nor do we deem it necessary to discuss at length the meaning of Article 852, nor of Articles 3493, 3494, 3495 and 3503, for all of them are fully discussed in the cases already cited or which we shall cite, and particularly in Opdenwyer v. Brown, supra.
In the Le Rosen case the facts were identical with those presented here. The Court said [52 La.Ann. 192, 26 So. 855]: "This is a suit to establish the boundary line * * *. The only real defense is the prescription of thirty years. * * *"
Further, in the body of the opinion, appears the following:
"We do not think that it can be denied that the boundary line as fixed by the survey made under order of court, and adopted by it, and made the basis of its judgment, is the true boundary line between the properties of the plaintiff and the defendant according to their written titles; nor do we think there is any claim set up that those titles conflict in any manner with each other.
"Defendant's contention is that she and her authors have had for a long time possession of the strip of land in controversy herein, and by reason of that fact have acquired the ownership of the same by the prescription of 30 years."
The Court found that the defendant had not herself occupied the land during the entire period of thirty years and that therefore she could not base her defense on the plea of prescription of thirty years; in other words, she could not rely upon *Page 234 
the prior possession of her predecessors in title. The Court quoted with approval the following from the American Digest: "A claimant of land, by adverse possession cannot tack to the time of his possession that of a previous holder, where the land is not included in the boundaries, in the deed from such holder. * * *" 1 Cent. Dig., Adverse Possession, § 214.
If this decision could still be accepted as authoritative it would, of course, provide the end to defendant's case but in Opdenwyer v. Brown, supra, it was expressly overruled in the following language: "We have examined the case of [Vicksburg, S. P.] Ry. Co. v. Le Rosen, 52 La.Ann. 192, 26 So. 854, and there is no doubt that it holds views opposed to those herein above stated. But that case stands alone, and since we cannot accept it as sound in law, we must perforce overrule it. Under that decision no boundary could ever be fixed permanently; and if perchance it should be discovered that Bienville had misread the plan of his engineer and located his `place d' armes' a few hundred feet higher up, or lower down, the Mississippi than such plan calls for, there is no title to a foot of land in the city of New Orleans, which would not call for correction; and since the land which each successive purchaser took possession of would not be the same land which his title called for, it follows (if we accept the Le Rosen case) that he could not `tack' onto his own possession that of his supposed author, and thus could not protect his boundaries, by the prescription of 30 years. That would be against all common sense; and law is common sense, as far as legislators, courts, and men of law will let it remain so." [155 La. 617, 99 So. 485.]
And that it may be quite clear that under such facts as we have here, it was the opinion of our Supreme Court, as expressed in the Opdenwyer case, that the possession of the ancestor in title may be "tacked" on where the prescription of thirty years is pleaded in an action in boundary and there has been a visible, physical boundary beyond the title limits. We quote the following from that opinion.
"Let us then take a case of boundaries. Say that A buys a tract of land bounded on the north by the line X, and that C acquired the adjoining tract bounded on the south by the same line X. The former then builds his fence or wall N feet north of the line X; that is to say, on the land of C. After 25 years have elapsed, A sells to B his tract of land, describing it as bounded on the north by the lands of C, and B goes into possession of the whole tract up to the fence or wall aforesaid. Five years after that, being 30 years after the fence or wall was set up, C brings an action to fix the boundary between his property and that of B. And this is what R.C.C. art. 852, says:
"`Art. 852. Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those underwhom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in HIS title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one cannot prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by 30 years possession.' (Italics and capitals ours.)
"It will be observed that in such a case the holder of the junior title may retain any quantity of land `beyond his title' which he or those under whom he holds may have possessed for 30 years."
This same view was later expressed in Emmer v. Rector,175 La. 82, 143 So. 11, 14, wherein the court said:
"Article 3475 of the Civil Code provides that: `Immovables are prescribed for by 30 years without any title on the part of the possessor, or whether he be in good faith or not.' See to the same effect article 3499 of the Civil Code.
"Under these codal articles actual possession by a party and his authors in title for more than 30 years gives the possessor title by prescription. Evasovich v. Cognevich, 159 La. 1035,106 So. 556; Johnson v. Congregation Daughters of the Cross,162 La. 657, 110 So. 894.
"Defendant refers to article 3503 of the Civil Code, which reads: `How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.' And he argues, as we understand the argument, that, in order *Page 235 
for the prescription to be effective, the one pleading it must actually possess as owner for the entire prescriptive period of 30 years.
"In our opinion, all that the article means is that the prescription of 30 years cannot be effectively pleaded by the possessor beyond the limits of the land he actually possesses. It has no application to the transfer of possession from one possessor to another. See Opdenwyer v. Brown, 155 La. at page 623, 99 So. 482."
In the Opdenwyer case the Supreme Court cited many early cases, in which it "recognized that boundaries long established should not be disturbed" and then proceeded to discuss certain later cases, notably Wemple v. Albritton, 154 La. 359, 97 So. 489, and Broussard v. Guidry, 127 La. 708, 714, 53 So. 964. It discussed its holding in the Broussard case as follows:
"In Broussard v. Guidry, 127 La. 714, 53 So. 967, this court maintained a boundary which had stood undisturbed for more than 30 years; although such boundaries did not correspond with the original survey, and the defendant had in her possession 90 acres more than her titles called for, whilst plaintiff lacked more than 80 acres of what his titles called for. The court said:
"`Defendant and her authors having had possession, we maintain the prescription of 30 years.'"
Note the words "and her authors".
In the Opdenwyer case the Court said that in Wemple v. Albritton, supra, it had held "* * * that in the sale and delivery of a plantation having visible bounds the physical boundaries should prevail over ideal bounds given in the deed of sale, and held distinctly that the purchaser succeeded to the possession of his vendor to the full extent of the property delivered under the deed."
Note that the court did not say "to the full extent of the property described under the deed".
It seems clear to us, as a result of these decisions, that the now well-established rule is that where there is a visible boundary, which has been in existence for thirty years or more, and the defendant in a boundary action, or his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years will be sustained, since the defendant may show that, though he, himself, has not occupied the property for thirty years, the occupancy of his predecessors in title may be "tacked" to his own. It is true that, in order that this rule apply, certain conditions must be met. First, there must be a visible boundary, such as a fence or wall, and second, there must be actual possession, either in person or through ancestors in title, for thirty years or more, of the land described in the title and also of that beyond the title as far as the actual physical boundary. Those conditions are met here.
There are many cases which, at first glance, may seem to throw doubt on whether this rule is firmly established. Some were decided prior to the decision in Opdenwyer v. Brown and are overruled by it. All of the others present distinguishing features. Most of them involve problems concerning title and not the mere fixing of boundaries. As illustrative of the distinction between an action in boundary and one involving title, we quote the following from Broussard v. Broussard, 8 La.App. 635:
"It is true that in Conroy v. Pine Belt Oil Company,143 La. 879, 79 So. 523, the Court quoted the case of [Vicksburg, S. 
P.] Ry. Co. v. Le Rosen, 52 La.Ann. 192, 26 So. 854, which has since been overruled in Opdenwyer v. Brown, 155 La. 617, 99 So. 482. The latter case however, it must be noted, was a suit for the fixing of a boundary and was not one involving the ownership of land claimed by virtue of the prescription of thirty years acquirendi causa. The Court drew a marked distinction in that case between a boundary suit and one for the ownership of property.
"In an action for a boundary the Court held that the owner may retain the land beyond his title up to the visible bounds, which may have been established there, and may maintain his possession under the plea of prescription of twenty or thirty years. For that purpose he may join his possession to that of the prior or preceding possessor. Not so, when the land is claimed under the prescription of thirty years. In such a case there must be no break in the possession; if there be, the possession automatically is restored to the owner, and a new possession begins, and which must be opened and continuous during thirty years for the acquisition of title." *Page 236 
We think it necessary to discuss one case especially cited by plaintiffs and much relied on, i.e., Simmons v. Miller, La.App., 170 So. 521, 525. While it is true that in that case the Court of Appeal for the First Circuit held that the plea of prescription of thirty years could not be availed of, it clearly recognized the well-established rule followed in the several cases cited by us. Its reason for refusing to maintain the plea of prescription of thirty years was that it found that "* * * even plaintiff's authors in title * * * never did hold the land up to the line claimed. * * *" and that "the period of 30 years had not run from the time * * * the fence was erected to the filing of a suit * * *".
Our conclusion is that the fence, upon which defendant relies, had been in existence, in its present location, for, at least, thirty years prior to the filing of this suit and that there had been actual possession not only of the property covered by defendant's title, but also of that land beyond the written title up to the actual physical boundary, the fence, by defendant or his predecessors in title during that thirty years and that, therefore, the plea of prescription of thirty years must prevail; consequently the judgment appealed from is affirmed.
Affirmed.