ELLIS, Judge.
Plaintiff has filed this suit in which he seeks to have the boundary between his property and that of the defendant established by the court.
The defendant filed a plea of prescription of ten and twenty years under LSA-C.C. Article 853, and also of thirty years under LSA-C.C. Article 852.
After trial the District Court for oral reasons assigned rendered judgment dismissing plaintiff’s suit at his cost.
The plaintiff has appealed from this judgment.
There is no merit in the prescriptive plea of ten and twenty years and the defendant does not reurge same in this court. The only question is that of thirty years prescription under Article 852, LSA-C.C.
The survey made under order of Court by T. F. Kramer, Civil Engineer, on June 7, 1948 shows the correct line according to the titles of plaintiff and defendant to be as contended by the plaintiff, however, the property of plaintiff as well as that of defendant fronts upon State Route 894, and leading into the property of plaintiff and defendant from this State Route is a dirt road which the defendant claims as being *623 upon her property and as the correct boundary or dividing line between the two estates. The defendant contends that the south line of this dirt road leading into her property in an easterly direction from the State Route to where it intersects or joins an old fence line to the south of her residence is the proper boundary line.
The testimony of the surveyor is to the effect that the road encroaches upon the plaintiff’s property for a distance of approximately nine or ten feet. In other words, if the . defendant is entitled to a judgment it would have to be under her plea of thirty years possession beyond her title to a visible boundary. See Henly v. Kask, La.App., 11 So.2d 230 and cases cited therein.
The only portion of the defendant’s property with which we are concerned is that portion which fronts on State Route 894 for a distance of 192 feet and runs back to Bayou Boeuf.
It is shown that Stanley Glynn purchased a strip of land to the ’ south of defendant’s property which also fronted on State Route 894 for a distance of 192 feet and ran back to Bayou Boeuf. Out of this piece of land he sold to his brother, the plaintiff herein, Lawrence Glynn, a lot which began at the defendant’s southwest corner on State Route 894, ran south 60 feet, thence east 60 feet, thence north 60 fee to the south line of the defendant’s property, thence west 60 feet to the point of beginning.
Prior to the time that State Route 894 was constructed, the witnesses spoke of an old gravelled road which ran north and south across the Stanley Glynn and Le-Normand tracts of land. This old road was located approximately 145 feet east of State Route 894 which the witnesses refer to as the new road or shell road. It is shown that this gravelled road was approximately 75 feet in front of the defendant’s home, and it is further shown that the defendant had a fence on the line between her property and the Stanley Glynn property which ran from Bayou Boeuf to the front of her residence.' This old fence is on the correct boundary line.
Prior to the date that the new road was built the defendant and her ancestors in title used a portion of the present dirt road to come to the old gravelled road. There is testimony that prior to the construction of State Route 894 that from the old grav-elled road in a westerly, direction there was a headland which the defendant claimed was the boundary between the two properties. It was not until after State Route 894 was constructed that the dirt road now in dispute was established as a means of ingress and egress.' There is no testimony in the record to show that this dirt road was ever established by the defendant and Glynn or their authors in title as a boundary line between the two properties, and the defendant’s case must rest upon thirty years possession as required by law by her alone.
It was testified that the State Route 894 was built in 1927 or thereabouts, and the present suit was filed, on August 6, 1947 and it was further shown that this same dirt road had been used by the Glynns for approximately fifteen years without any question. It is also shown that other people used this road and the headland along the old fence to Bayou Boeuf. There is some testimony that some of the witnesses thought the road belonged to the defendant and her ancestors in title, however, none of them testified that it was ever considered as an established boundary.
Introduced in connection with the testimony of Mr. L. O. Pecot, present District Attorney and at the time a practicing attorney in Franklin, is a letter dated August 11, 1945 addressed to Mr. Stanley Glynn in which .Mr. Pecot states that the defendant had come to see him with reference to her property lines and that he had advised her to have' a surveyor make a survey of the lines between the Glynn and LeNor-mand properties in order'“that she might know once and for all where her boundaries to her property are.” Mr. Pecot further stated that the defendant had told him Glynn was agreeable to such a sur *624 vey, and he had proceeded to talk to Mr. T. F. Kramer with regard to making this survey.
On November 6, 1945 in a letter to Stanley Glynn, Mr. T. F. Kramer, Civil Engineer, stated that he had recently completed the survey for the defendant and “indirectly for you covering the portion of your property on State Route 894 near Bayou Beouf.” He stated in this letter that he had forwarded a report of the survey to the defendant and if Glynn was interested in receiving a copy of the plat to contact the defendant as he had given her several copies. He further wrote Glynn that although the defendant had employed him directly to do the work, she had’ stated that Glynn would assume through her half of the expenses and that his bill was $86.
On November 27, 1945 there is another letter from T. F. Kramer, Civil Engineer, to Stanley Glynn in which he stated that he was sorry he was out of town when Glynn evidently went to see him in Franklin. He also stated: “I am very sorry to learn that Mrs. LeNormand is still all upset over the survey.”
Along in June 1944, which was prior to the survey, Stanley Glynn had built a fence from State Route 894 along the southern boundary of the dirt road now in dispute a distance of approximately 220 feet to the east where it connected with the old fence which the' defendant and her ancestors in title had maintained as a division fence and which is exactly on the line as shown by the survey. In fact, all the fences on other tracts of property shown in the survey are on the correct line except the southern boundary of the dirt road. Glynn built this1 fence in order to keep his cow in. There had never been a division fence in front of the defendant’s property to State Route 894 which was shown to be about 220 feet.
Glynn testified that there was no question of this fence being built as a boundary between the two properties but that he and the defendant had always been friendly and he had no desire to interfere with her use of -the dirt road to State Route 894 ;• that he as well as others had used this dirt road without any objection.
After the survey Glynn moved the fence to within one foot of the line which, of course, cut off the defendant’s use of the dirt road to State Route 894, whereupon she filed a suit which was withdrawn. Stanléy Glynn testified that he agreed to move the fence back to the southern boundary of the dirt road and that the line would be resurveyed. Shortly after moving the fence back Lawrence Glynn, plaintiff herein, parked his car on this dirt road opposite the residence, and the defendant sent the Constable to notify him to move the car or she would charge him with trespass. He refused to do this as he testified the property belonged to him and he would not move his car. The defendant then made an affidavit for criminal trespass against the plaintiff, Lawrence Glynn, ánd had him arrested and he gave bond and the case was later nolle prossed by the District Attorney. Immediately after the defendant caused the plaintiff to be arrested he filed this boundary suit. '
Without detailing the testimony of the many witnesses who testified in this case other than as heretofore given, the defendant has failed to sustain her plea of 30 years prescription by the kind of evidence required under the jurisprudence. The mere fact that the defendant employed a surveyor in 1947 to establish the boundary line is strong evidence that she herself did not consider the boundary line to include the entire dirt road. In truth, she did not know where the correct boundary line lay. If she had always considered the dirt road as her property by prescription beyond her title she would not have paid for a survey. She had no more possession of this road than the Glynns. Plaintiff has established his case and is entitled to a judgment fixing the boundary line as shown by the survey.
It is therefore ordered that the judgment of the District Court be reversed and the boundary line fixed as shown by the survey of T. F. Kramer, Civil Engineer.